James C. Arnold - ISB No. 3688
Matthew J. Vook - ISB No. 8901
Lea Kear – ISB No. 9357
PETERSEN, PARKINSON
    & ARNOLD, PLLC
390 N. Capital Avenue
P.O. Box 1645
Idaho Falls, ID 83403-1645
Telephone: (208) 522-5200
Facsimile: (208) 692-2494
Email: jcarnold@ppainjurylaw.com
       matt@ppainjurylaw.com
       lea@ppainjurylaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS LARSON<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>　　　　Defendant. | Case No.: _____<br><br>**COMPLAINT** |

COMES NOW, the above-named Plaintiff, Douglas Larson, by and through his attorney, James C. Arnold, of PETERSEN, PARKINSON & ARNOLD, PLLC, and for his claim against the Defendant complains and alleges as follows:

1. Plaintiff is a natural person residing in the State of Idaho and at all times relevant hereto was employed by ITG Idaho Treatment LLC, Group LLC, and was a participant in a Group Universal Life Insurance Policy No. GUM-104940 (The Plan) underwritten by Life Insurance Company of North America and administered by Cigna.

2. Plaintiff made a claim identified as Incident Number: 3641105 under The Plan in accordance with the Life Insurance provisions of The Plan.

3. This is an action brought under ERISA, 29 U.S.C. §1001 *et.seq.* This Court has jurisdiction over this cause of action pursuant to 29 U.S.C. §1132(a)(l). Venue is appropriate under 29 U.S.C. §1132(e)(2).

4. The remedies the Plaintiff seeks in this action under the terms of ERISA and under the terms of the Plan are for benefits due pursuant to 29 U.S.C. §1132(a)(l)(B), for an award of prejudgment interest, and for an award of attorney fees and costs under 29 U.S.C.§1132(g).

5. Plaintiff made application for Long Term Disability benefits under The Plan and was determined to be disabled and eligible for benefits under The Plan. Defendant began paying benefits under the Plan beginning September 29, 2015, and related eligibility back to March 13, 2015.

6. The factual bases for Plaintiff's claim for Waiver of Premium (WOP) benefits, in addition to his Long Term Disability, is that he suffered and continues to suffer from low back pain, post laminectomy syndrome, and hypertension, which rendered and continue to render him disabled.

7. The Waiver of Premium provision within the policy states that an employee must be disabled for 9 straight months before being eligible for Waiver of Premium. Continuing coverage during the Waiver Waiting Period, the policy under which he is insured, contains the following provision:

*Extended Death Benefit*

*If an Employee becomes Disabled and is less than age 60, the Life Insurance Benefits shown in the Schedule of Benefits will be extended without premium payment until the earlier of the following dates:*

1. *The date the Employee is no longer Disabled.*
2. *The date the Employee fails to qualify for Waiver of Premium or fails to provide proof of Disability as indicated under Waiver of Premium.*

8. Plaintiff was born in 1959 and was under age 60 at the time he became disabled.

9. On December 3, 2015 Defendant sent Plaintiff a letter acknowledging receipt of his Waiver of Premium referral on his Life Insurance coverage under The Plan. The letter indicated that the referral was made because Plaintiff qualified for Long Term Disability (LTD) coverage under The Plan.

10. On January 11, 2016, Defendant sent Plaintiff a letter acknowledging his claim for Waiver of Premium benefits. Defendant stated that it had conducted an initial review but was unable to make a determination at that time. Defendant requested further medical documentation. Plaintiff called his medical provider's office several times to follow up on Defendant's letter and ensure the requested information was sent to Defendant.

11. On February 2, 2016, Defendant sent Plaintiff a letter advising that Defendant was in the process of reviewing Plaintiff's claim.

12. On February 11, 2016 Defendant sent Plaintiff a letter denying his claim. Defendant stated that Plaintiff's claim had been reviewed by a Nurse Case Manager, Associate Medical Director, Vocational Rehabilitation Specialist, and Waiver Specialist. Defendant alleged that Plaintiff could work within his restrictions as either an "Information Clerk" or "Gate Guard" and that based on that determination, "we are unable to consider you disabled at this time." The letter also contained information on

the appeal process and advised Plaintiff that, pursuant to ERISA, he was required to go through Defendant's administrative appeal process prior to pursuing legal action. The letter advised Plaintiff that he must submit an appeal within 180 days of receipt of Defendant's letter. Plaintiff received Defendant's letter via USPS on February 17, 2016. The letter was signed by an employee identified as "Doris O." Plaintiff made several follow up phone calls to "Doris O." to inquire about Defendant's determination.

13. As instructed by Defendant, Plaintiff timely appealed and requested a review of determinations denying Plaintiff's entitlement to Waiver of Premium benefits. Plaintiff appealed by letter, which he mailed on March 3, 2016.

14. On March 9, 2016 Defendant confirmed receipt by letter of Plaintiff's appeal of his Waiver of Premium and Waiver of Cost claim under The Plan. Defendant indicated that Plaintiff's claim was being reviewed by the Disability Review Team and that an employee would contact Plaintiff within 15 days.

15. On March 16, 2016 Defendant informed Plaintiff by letter that Defendant would proceed with the appeal review of Plaintiff's claim. Defendant confirmed that all information needed for the appeal had been received and that Defendant would conduct a peer review of the original claim decision by a healthcare professional with appropriate training and experience.

16. Defendant sent Plaintiff two separate letters on April 14, 2016. In one letter, Defendant informed Plaintiff that it was in the process of reviewing Plaintiff's claim with a medical professional to determine Plaintiff's functional ability. Defendant further stated that a determination would be made as soon as possible. In the other letter, Defendant enclosed a form entitled "Disability Questionnaire" and requested that

Plaintiff complete the form and return it to Defendant. Plaintiff received the Disability Questionnaire on April 21, 2016 and mailed it back to Defendant on May 5, 2016.

17. On April 25, 2016, Defendant wrote Plaintiff a letter advising of the outcome of its appeal review. Defendant indicated that it decided to uphold its prior decision to deny Plaintiff's claim. Defendant stated that a medical doctor had reviewed Plaintiff's claim file and identified restrictions which Plaintiff would have going forward from September 13, 2015. Defendant stated that that a vocational counselor, who was unidentified, reviewed Plaintiff's restrictions and conducted a transferrable skills analysis. Defendant alleged that Plaintiff could work in two occupations with his restrictions, as an "Information Clerk" or a "Gate Guard." Based on this allegation, Defendant contended that Plaintiff did not meet the policy's definition of "Disability," and kept his claim in closed status. Defendant informed Plaintiff that a second appeal request was not required, and he had the right to bring legal action pursuant to ERISA.

18. Plaintiff received Defendant's April 25, 2016 letter on May 3, 2016 and followed up with several telephone calls to Defendant's offices. On May 16, 2016, Plaintiff called and left a message requesting the vocational and medical review written findings and the names of the doctor and vocational counselor who conducted the reviews.

19. On May 26, 2016, after receiving no response, Plaintiff called Defendant's office again. Plaintiff received the voicemail of Linda Gump, the signor of the April 25, 2016 letter. Ms. Gump's voicemail indicated that she was out of the office for an indeterminate amount of time.

20. On June 7, 2016, Plaintiff was still awaiting a response and called Ms. Gump again. He received voicemail again indicating that Ms. Gump was out of the office. Plaintiff

spoke with an individual named "Danna" who informed him that he needed to submit a request to obtain the vocational and medical reports.

21. On June 16, 2016, pursuant to "Danna's" instructions, Plaintiff sent a letter to Defendant via certified mail requesting the vocational and medical reports.

22. On November 4, 2016 Defendant sent Plaintiff a letter stating that it acknowledged Plaintiff's appeal and that the appeal would be handled by Welser Maltez, from the Disability Appeals Team. The letter was signed by Welser Maltez, who identified himself as the "Disability Claim Manager."

23. On December 27, 2016, Plaintiff received the final denial of the appeal for Waiver of Premium benefits. The letter stated that Plaintiff had exhausted all levels of administrative appeals and that no further appeals would be considered.

24. Plaintiff claims in this action that there was and is no credible evidence upon which Defendant could or can rely that the evidence did not support his claim for Waiver of Cost and Waiver of Premium benefits on his Group Universal Life Insurance.

25. On May 24, 2017 Defendant wrote Plaintiff a letter regarding his Long Term Disability (LTD) benefits. Plaintiff received Defendant's letter six days later, on May 30, 2017. Defendant informed Plaintiff that it had evaluated Plaintiff's disability status after September 9, 2017, which Defendant indicated was the date the definition of "disability" changed under The Plan.

26. According to Defendant's May 24, 2017 letter, after September 9, 2017, in order to qualify as "disabled" for purposes of receiving LTD benefits, Plaintiff had to be unable to perform the material duties of any occupation which he was qualified for, and unable to earn 80% or more of his indexed earnings from working in his regular occupation.

27. Defendant's letter stated that it conducted an internal review of Plaintiff's file. Part of the review consisted of a review by medical staff, who concluded that Plaintiff could perform constant sitting, frequent reaching, grabbing, and fine manipulation as well as occasional standing, walking, and lift/pull/carry up to 10 pounds. Defendant then referred Plaintiff's claim to its vocational department for a Transferable Skills Analysis. Defendant alleged that it identified two occupations which Defendant thought Plaintiff should be able to perform based his work capacity, restrictions and limitations as well as employment and educational history. Defendant concluded that because it identified two occupations, Plaintiff was not disabled. Defendant closed Plaintiff's claim and ceased payment of LTD payments as of September 8, 2017.

28. Following receipt of Defendant's May 25, 2017 denial letter regarding his LTD benefits, Plaintiff appealed.

29. A Functional Capacity Evaluation was performed by Nathan Hunsaker, DPT, on August 25, 2017. Mr. Hunsaker determined that Plaintiff had the following work restrictions: standing/walking limited to occasional, defined as one third of the work day; sitting restricted to seldom, defined as one hour or less; exertion on an occasional basis of 10 to 20 pounds; and bending/stooping restricted to seldom. The Functional Capacity Evaluation further found that Plaintiff's medical condition required him to lie down periodically for pain relief and that could not be accommodated during regular work breaks. The Functional Capacity Evaluation also found that Plaintiff was unable to sit for more than 10 minutes at a time. Mr. Hunsaker opined that Plaintiff was unable to work an 8-hour day, 5 days per week.

30. The Functional Capacity Evaluation was reviewed by Dr. Jason Poston and Ryan Williams, PA-C, of Pain and Spine Specialists of Idaho, who agreed with the findings by letter dated September 6, 2017.

31. Dr. Brandon Kelly, of Idaho Neurology and Spine, opined that full time employment was not possible for Plaintiff due to his chronic, extensive spine pathology in his chart notes from Plaintiff's visit on September 13, 2017.

32. On November 15, 2017 Delyn Porter, a vocational rehabilitation counselor, conducted a vocational assessment of Plaintiff. Mr. Porter concluded that Plaintiff was unemployable in any competitive work environment and that he was functioning at a "below sedentary" physical demand work capacity.

33. On December 13, 2017 Defendant wrote Plaintiff's counsel a letter confirming its receipt of Plaintiff's appeal of the denial of his LTD claim. Defendant confirmed that it had been provided with the Functional Capacity and Vocational Evaluations, the opinions of Drs. Poston and Kelly, and Plaintiff's video deposition. While confirming receipt of the appeal materials, Defendant noted that "[n]o new medical exam findings or diagnostic testing results are provided to change prior recommendations" since its prior denial.

34. On February 21, 2018 Defendant contacted Plaintiff by letter addressed to his counsel and indicated that it was upholding its decision to deny his claim for LTD benefits under the Plan. The letter was signed by Appeals Claim Specialist "Krizia E."

35. Following receipt of Defendant's February 21, 2018 letter, Plaintiff contacted Appeals Claim Specialist "Krizia E." and requested documentation used by Defendant in its

review, including any notes or reports written by the physician who reviewed Plaintiff's claim. Defendant followed up by fax and provided information to Plaintiff.

36. On August 15, 2018 Plaintiff sent a letter by overnight mail addressed to "Krizia E." and indicated that he was submitting a second appeal of Defendant's denial of Plaintiff's LTD benefits beyond September 8, 2017. In support, Plaintiff supplemented additional medical records for care which had been obtained since the first appeal and noted that Plaintiff's physical condition had not changed since September 8, 2017 and he remained unable to work on a reliable basis 8 hours a day, 5 days per week. Plaintiff also submitted records from a new medical provider, showing Plaintiff had limitations on the use of his hand.

37. Defendant confirmed receipt of Plaintiff's second appeal and indicated that it was being referred to its Disability Appeals Team.

38. On October 17, 2018, Defendant overturned its prior decision and determined that Plaintiff was entitled to LTD benefits.

39. On October 31, 2018 Defendant's Disability Claim Manager, "Miriam M." contacted Plaintiff to indicate that Plaintiff's LTD claim was re-opened and ongoing LTD benefits had been approved. Defendant issued a check for retroactive LTD benefits, dating back to September 9, 2017.

40. In determining that Plaintiff was eligible for LTD benefits, Defendant reversed its prior determination with respect to Plaintiff's disability status and found that Plaintiff met the definition of "disabled," and that he was disabled and entitled to benefits beyond September 8, 2017.

41. Plaintiff's LTD coverage and WOP coverage are both underwritten by Life Insurance Company of North America and administered through Cigna.

42. Defendant has made representations to Plaintiff as to what qualifies as "disabled" for purposes of receiving LTD benefits and WOP benefits.

43. For purposes of entitlement to LTD coverage beyond September 8, 2017, Plaintiff is "disabled" if he is unable to perform the material duties of any occupation which he was qualified for, and unable to earn 80% or more of his indexed earnings from working in his regular occupation. Defendant has determined that Plaintiff qualifies as "disabled" under this definition.

44. For the purposes of entitlement to WOP coverage, Defendant uses an identical definition of "disabled."

45. Defendant set forth the definition of "disabled" for WOP coverage beyond the initial Waiver Waiting Period in its December 3, 2015 letter to Plaintiff.

46. For purposes of entitlement to WOP coverage beyond the initial Waiver Waiting Period, Plaintiff is "disabled" if he is unable to perform the material duties of any occupation he might become qualified for. Despite this being a nearly identical definition, Defendant has determined that Plaintiff does not qualify as "disabled" under this definition.

47. Defendant's internal reviews of Plaintiff's entitlement to LTD and WOP coverage both included review of Dr. Kelly's medical records of Plaintiff.

48. In determining Plaintiff's entitlement to WOP benefits, based on its review of Dr. Kelly's medical records, Defendant concluded that Plaintiff could occasionally sit, stand, walk, reach overhead, grasp firmly, and exert force of up to 10 pounds.

Defendant concluded that Plaintiff could frequently manipulate, do simple grasping, or reach at desk level. Defendant informed Plaintiff of this conclusion by letter on February 11, 2016.

49. In determining Plaintiff's entitlement to LTD benefits, based on its review of Dr. Kelly's medical records, Defendant concluded that Plaintiff was capable of performing constant sitting, frequent reaching, grasping and fine manipulation, as well as occasional standing, walking, and lift/push/pull/carry up to 10 pounds. Defendant informed Plaintiff of this conclusion by letter on May 24, 2017.

50. In determining Plaintiff's entitlement to WOP benefits, based on the restrictions it concluded Plaintiff had from Dr. Kelly's medical records, Defendant conducted a Transferable Skills Analysis through its vocational department.

51. In determining Plaintiff's entitlement to LTD benefits, based on the restrictions it concluded Plaintiff had from Dr. Kelly's medical records, Defendant conducted a Transferable Skills Analysis through its vocational department.

52. In determining Plaintiff's entitlement to WOP benefits, Defendant's Transferrable Skills Analysis identified two occupations it alleged Plaintiff could perform.

53. In determining Plaintiff's entitlement to LTD benefits, Defendant's Transferrable Skills Analysis identified two occupations it alleged Plaintiff could perform.

54. In determining Plaintiff's entitlement to WOP benefits, Defendant concluded that, "[s]ince appropriate job opportunities have been identified that meet your skill set and are within your restrictions and limitation given by your provider, we are unable to consider you disabled at this time."

55. In determining Plaintiff's entitlement to LTD benefits, Defendant initially concluded that, "[s]ince appropriate job opportunities have been identified, we are unable to consider you disabled at this time." Defendant later reversed this determination through the appeal process.

56. By its reversal of the denial of Plaintiff's LTD benefits, Defendant found Plaintiff was unable to perform the material duties of any occupation he qualified for.

57. Plaintiff's entitlement to LTD benefits was fully adjudicated through the Defendant's appeal process. As part of that process, Plaintiff was found to be disabled. The issue of Plaintiff's disability was adjudicated to finality, with Defendant ultimately finding Plaintiff met the definition of "disabled" and was entitled to LTD benefits.

58. Defendant should be estopped from advancing a position with respect to Plaintiff's entitlement to WOP benefits which is blatantly at odds with the position it advanced with respect to Plaintiff's entitlement to LTD benefits. Specifically, using a nearly identical definition of "disabled" and nearly identical record, Defendant inexplicably concluded that Plaintiff is entitled to LTD benefits but not to WOP benefits.

59. Based upon Defendant's own review process, there is no good evidence which supports its conclusion that Plaintiff is not disabled for the purposes of entitlement to WOP.

60. The failure and refusal of Defendant to approve the Waiver of Premium benefits to which Plaintiff is entitled under the Plan is a breach of the terms of the Plan and violation of ERISA.

61. The failure and refusal of Defendant to approve the Waiver of Premium benefits claimed by Plaintiff has caused damage in an amount equal to the past and future benefits he was and is entitled to under the Plan.

62. In addition to the benefits to which he is entitled under the Plan, Plaintiff is entitled to attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g) and pre and post-judgment interest to the date of payment and the unpaid benefits.

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

1. For the benefits to which he is entitled under the Plan together with attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g) and pre and post-judgment interest to the date of payment and the unpaid benefits; and

2. For such other and further relief as this Court may deem just and equitable.

DATED _March 26,_____, 2019.

PETERSEN, PARKINSON & ARNOLD, PLLC

_____
James C. Arnold, Attorney for Plaintiff